## KILLINGBECK v KILLINGBECK

Docket Nos. 258358, 261404, 261405. Submitted August 2, 2005, at Lansing. Decided December 6, 2005, at 9:00 a.m.

Rebeka S. Killingbeck brought an action for divorce from Dennis D. Killingbeck in the Arenac Circuit Court. Before they married, the Killingbecks had signed an acknowledgement of parentage stating that they were the natural parents of a son born to Rebeka Killingbeck. A judgment of divorce listing the boy as the parties' child and awarding sole physical custody to Rebeka Killingbeck was entered. Rebeka Killingbeck and Tony Rosebrugh thereafter filed a paternity action to revoke the acknowledgement of parentage and to declare Rosebrugh's paternity of the child. In the paternity case, the court, Ronald M. Bergeron, J., entered a stipulated order revoking the acknowledgement of parentage and amending the child's birth certificate to show Rosebrugh's paternity. In the divorce case, the court entered an order providing that Dennis Killingbeck shall continue to have the rights of a de facto father and that those rights would not be diminished by any request by Rosebrugh for parenting time, support, and custody. The court also allowed Rosebrugh to intervene in the divorce case for purposes limited to custody, parenting time, and support. The court subsequently denied Rosebrugh's motion to terminate any parental rights or duties of Dennis Killingbeck, awarded Dennis Killingbeck specific, separate parenting time with the child, and assigned child support responsibility to Rosebrugh. Rebeka Killingbeck and Rosebrugh appealed.

The Court of Appeals *held*:

1. The claim by Rosebrugh and Rebeka Killingbeck that the trial court erred in not ordering Rosebrugh's joinder in the divorce lacks merit. The trial court permitted Rosebrugh to intervene in the divorce action and did not limit Rosebrugh's participation in the action. Additionally, the only parties to a divorce action are the two people seeking dissolution of their marriage, and third-party intervention is permitted only in extremely limited circumstances not present here. Rosebrugh's sole recourse on any issue involving his son was in the paternity action.

2. To the extent that the trial court relied on equitable parenthood or equitable estoppel to award Dennis Killingbeck parenting time as the child's de facto father, that order was entered in error. However, the trial court had revoked the acknowledgement of parentage, under which Dennis Killingbeck had the same relationship with the child as if the child were born or conceived during the marriage. Because the trial court ordered the revocation of the acknowledgement of parentage while granting Dennis Killingbeck parenting time, it appears that the trial court operated under a mistake of law, which constitutes an abuse of discretion. The order revoking the acknowledgement of parentage must be vacated, the order granting Dennis Killingbeck parenting time must be reversed, and the matter remanded for reconsideration of the motion to revoke the acknowledgement of parentage.

3. The trial court properly considered and denied Rosebrugh's motion for custody and parenting time without conducting a full evidentiary hearing regarding the child's best interests. To warrant a change in custody, the movant must first establish a material change in circumstances, something more than normal life changes, since the last custody order and demonstrate that the change has or could have a significant effect on the child's well-being. Rosebrugh's motion did not meet that threshold, so the trial court was not authorized by statute to revisit an otherwise valid prior custody decision and to engage in a reconsideration of the statutory best interests factors.

4. In this case, the only instance of an attorney's dual representation occurred during the period in which Rebeka Killingbeck and Rosebrugh shared the same goal—seeking the revocation of the acknowledgement of parentage. Because Rosebrugh failed to set forth with specificity the manner in which their attorney's joint representation prejudiced him during the later custody, parenting time, and support proceedings, no conflict of interest occurred.

Reversed in part, vacated in part, and remanded for further proceedings.

COOPER, P.J., concurring in part and dissenting in part, stated that the trial court improperly revoked Dennis Killingbeck's acknowledgement of parentage. The allegations to revoke the acknowledgement provide none of the bases for relief from final judgment in MCR 2.612(C)(1). Rebeka Killingbeck failed to establish by clear and convincing evidence that the revocation of the acknowledgement was proper considering the equities of the case.

Child custody, parenting time, and support issues are equitable in nature, but must be pursued within an extensive statutory framework. In this matter, the majority, without relying on equi-

table principles, has ordered that the child be separated from either Dennis Killingbeck, who raised the child and his half-sisters, or Tony Rosebrugh, the child's biological father.

With the entry of the judgment of divorce, Dennis Killingbeck was judicially determined to be the child's legal father, in spite of Rebeka Killingbeck's knowledge at that time that Dennis Killingbeck was not the child's natural father. Dennis Killingbeck is the legal and psychological father of the child, without regard to the fact that the child was not born or conceived during the marriage. As a legal parent, Dennis Killingbeck has full rights to seek parenting time under the Child Custody Act, limited only by the child's best interests. Tony Rosebrugh is the child's biological father. While the interests of a fit, biological parent may outweigh the interests of a third party, neither supersedes the best interests of the child. It is consistent to grant Dennis Killingbeck the right to parent his child and to grant Tony Rosebrugh parenting time, both, to protect the child's best interests. The trial court exercised its equitable powers and granted parenting time to both the child's biological and legal/equitable father, as the only way to serve the best interests of the child. Judge COOPER would affirm the trial court orders recognizing Dennis Killingbeck's right to parent his child and granting parenting time to Rosebrugh.

1. PARENT AND CHILD — EQUITABLE PARENT DOCTRINE.

The equitable parent doctrine applies upon divorce with respect to a child born or conceived during the marriage; the doctrine does not extend outside the context of marriage.

2. PARENT AND CHILD — EQUITABLE ESTOPPEL — NONPARENTAGE.

Although equitable estoppel has been used to estop a husband from denying paternity of a child born during the marriage, but of whom he is not the biological father, the doctrine does not extend beyond the context of marriage because the Child Custody Act, which comprehensively governs child custody matters, does not recognize it (MCL 722.21 *et seq.*).

3. PARENT AND CHILD — CUSTODY — REDETERMINATION — MATERIAL CHANGE IN CIRCUMSTANCES.

To warrant a change in custody after an order has been entered, the movant must first establish a material change in circumstances, something more than normal life changes, since the last custody order and demonstrate that the change has or could have a significant effect on the child's well-being; without meeting that threshold, the trial court is not authorized by statute to revisit an

otherwise valid prior custody decision and to engage in reconsideration of the statutory factors to be considered in the best interests of the child (MCL 722.27[1], 722.23).

4. ATTORNEY AND CLIENT — JOINT REPRESENTATION — CONFLICT OF INTEREST — PREJUDICE.

An attorney generally is prohibited from representing multiple clients when the representation of one client is directly adverse to, or may materially limit, the attorney's representation of another client; a party seeking the disqualification of an attorney for a conflict of interest must specifically demonstrate how and as to what issues in the case the likelihood of prejudice will result (MRPC 1.7).

*Schmidt & Palumbo, PLC* (by *Nichol J. Palumbo*), for Rebeka S. Killingbeck.

*Tyler & Tyler* (by *Stephen W. Tyler*) for Tony Rosebrugh.

*Robert J. Dunn, P.C.* (by *Robert J. Dunn*), and *Patrick R. Winter P.L.C.* (by *Patrick R. Winter*) for Dennis D. Killingbeck.

Before: COOPER, P.J., and BANDSTRA and KELLY, JJ.

BANDSTRA, J. These consolidated appeals involve custody, parenting time, and child support rights and obligations concerning Devon Dennis Rosebrugh, who is now seven years old. His biological parents are Tony Rosebrugh and plaintiff Rebeka Sue Killingbeck (hereinafter "plaintiff"). Defendant Dennis Dean Killingbeck (hereinafter "Killingbeck") signed an acknowledgement of parentage following Devon's birth and acted as Devon's father for the first four years of his life until DNA (deoxyribonucleic acid) testing revealed Rosebrugh's parentage and these actions ensued. The primary issue raised on appeal is the trial court's order granting parenting time to Killingbeck, coupled with an

order revoking the acknowledgement of parentage. We reverse the order granting Killingbeck parenting time, vacate the order revoking the acknowledgement of parentage, and remand.

### I. BACKGROUND FACTS AND PROCEEDINGS BELOW

Plaintiff testified that she lived with Killingbeck for a five-year period in the early 1990s; that she lived with Rosebrugh for approximately three months beginning in August 1997; and that, near the time of Devon's conception, she had engaged in intercourse with both Killingbeck, whom she saw approximately every other week, and Rosebrugh, whom she saw about once a week. Sometime in December 1997, plaintiff moved in with Killingbeck because she began to feel more attached to him. Rosebrugh testified that, before Devon's birth in July 1998, plaintiff assured him that they "would do blood work when the child was born," but that after Devon's birth, Killingbeck prohibited contact between plaintiff and Rosebrugh. Further, in August 1998, plaintiff and Killingbeck prepared and signed an acknowledgement of parentage stating that they were Devon's natural parents. See MCL 722.1001 *et seq.* Plaintiff testified that she had signed the acknowledgement of parentage stating that Killingbeck had fathered Devon because "[a]t the time . . . [she] believed [Killingbeck] was the father." However, she also stated that she did not feel certain that Rosebrugh had not fathered Devon and that she discussed her concerns with Killingbeck.

Plaintiff and Killingbeck continued living together through the time of their marriage in March 2002. In September 2002, plaintiff filed for divorce from Killingbeck. After doing so, plaintiff contacted Rosebrugh, and they arranged for genetic testing in October 2002 to

determine whether Rosebrugh was Devon's father. The test results confirmed Rosebrugh's paternity of Devon. About a year later, on October 7, 2003, plaintiff and Rosebrugh filed a paternity petition to revoke the acknowledgement of parentage that plaintiff had cosigned with Killingbeck. Plaintiff and Rosebrugh requested that the trial court enter an order declaring Rosebrugh's paternity of Devon. However, in the divorce case, the amended judgment that ended the marriage between plaintiff and Killingbeck, entered in May 2003, had listed Devon as one of the parties' children.

Regarding the paternal relationships with Devon, Rosebrugh testified that he visited Devon regularly since the child turned four years old, that he and Devon had a good relationship, that he provided financial support for Devon on many occasions, and that he intended to continue acting as Devon's father. Killingbeck testified that he had helped take care of Devon and supported him financially for the years that Devon lived with him, that he regularly contacted and had a close relationship with Devon until plaintiff moved out of the marital home, that he currently paid child support for Devon, that he still wanted to act as Devon's father, and that he had not yet participated in any paternity blood testing.

On March 17, 2004, the trial court entered two orders that tracked the terms of an agreement that Rosebrugh, plaintiff, and Killingbeck had reached in January 2004: (1) an order in the paternity case revoking the acknowledgement of parentage because Killingbeck had not fathered Devon, and amending Devon's birth certificate to reflect that Rosebrugh was Devon's biological father, and (2) an order in the divorce case providing that Killingbeck "shall continue to have the rights of a *de facto* father," that "any request regarding parenting time, support and custody . . . by . . . Tony Michael

Rosebrugh shall not diminish the rights of" defendant, and that the order "shall not be amended absent clear and convincing evidence that it is in the best interest of" Devon.

On May 4, 2004, Rosebrugh moved to intervene in the divorce case "with respect to custody issues of . . . Devon," pursuant to MCR 2.209. At a May 13, 2004, hearing in the divorce case, the trial court entertained Rosebrugh's motion to intervene. The trial court explained that it would "at least temporarily" grant Rosebrugh's motion to intervene "in this DM case for purposes of addressing issues regarding physical parenting time regarding . . . Devon . . . ." The court entered an order for limited intervention in June 2004 "for the limited purpose of all matters relating to custody, parenting time, and support of . . . Devon . . . , until further order of the Court." The order also provided "that the parties have not waived any rights or defenses relating to this matter by reason of stipulation or entry of this [o]rder."

During this time, plaintiff and Rosebrugh reconsidered the January 2004 agreement they had reached with Killingbeck, and the court orders implementing that agreement. On June 17, 2004, Rosebrugh moved to set aside the March 17, 2004, order regarding custody and awarding parenting time to Killingbeck, and moved to amend the judgment of divorce, to "dissolv[e] any legal rights or responsibilities . . . Killingbeck has to . . . Devon." At the June 25, 2004, hearing on Rosebrugh's motion, Rosebrugh requested "that the Court enter another order in the divorce action indicating that there has been a paternity order that's in effect that states [Killingbeck] is not the biological father of Devon . . . ." The parties argued whether, in light of the established fact that Rosebrugh was Devon's biological father, they

could by consent create or give to Killingbeck de facto or
equitable parental rights with respect to Devon. The
trial court indicated on the record that it would deny
Rosebrugh's motions.

On August 27, 2004, the trial court held a combined
hearing in the divorce and paternity cases to address
Rosebrugh's motion "to remove [Killingbeck] as a party
and terminate his parental rights," and his motion for
custody, parenting time, and support. Rosebrugh and
plaintiff reiterated their position that no legal basis
existed for Killingbeck to assert parental rights to
Devon. On the same date, the trial court entered an
order denying Rosebrugh's motions, as well as an order
denying a motion filed by plaintiff to modify the judg-
ment of divorce to clarify the legal issue of the marriage
between plaintiff and Killingbeck. After further discus-
sions with the parties concerning appropriate parenting
time for Rosebrugh and Killingbeck, the trial court also
entered an interim order awarding Killingbeck specific
parenting time with Devon.

On September 21, 2004, the trial court entered an
order in the paternity case denying Rosebrugh's motion
to remove Killingbeck as a party and to terminate his
parental rights. The court also ordered that Rosebrugh
and plaintiff share joint legal custody of Devon, that
plaintiff maintain sole physical custody, that Rosebrugh
and Killingbeck have specific, separate parenting time
with Devon, and that Rosebrugh pay child support in
the amount of $570 a month.

## II. ANALYSIS OF ISSUES RAISED ON APPEAL

### A

Rosebrugh and plaintiff first argue on appeal that the
trial court erred by failing to order Rosebrugh's joinder

as a necessary party to plaintiff's and Killingbeck's divorce action.[1] This contention can be easily resolved because it has no basis in fact.

The record reflects that the trial court entertained Rosebrugh's motion to intervene in the divorce action, permitted Rosebrugh to argue at length concerning the merits of his motion to intervene and the various bases for his assertion that Killingbeck had no parental rights regarding Devon, and addressed all the positions Rosebrugh raised. Further, on June 24, 2004, the trial court entered an "[o]rder for [l]imited [i]ntervention" making "Tony Rosebrugh . . . an intervener in this cause for the . . . purpose of all matters relating to custody, parenting time, and support of the minor child . . . ." Because the trial court permitted Rosebrugh to intervene in the divorce action and Rosebrugh does not argue that the court limited his desired participation in the action, Rosebrugh's and plaintiff's assertion of error lacks merit.

B

Rosebrugh and plaintiff next argue that the trial court erred by awarding Killingbeck parental rights

---

[1] The records in the two actions being reviewed here suggest a number of procedural irregularities. However, Rosebrugh's and plaintiff's contention regarding Rosebrugh's joinder as a necessary party in the divorce action is the only argument raised on appeal; other procedural questions are not preserved for review. See *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993); *Rentz v Gen Motors Corp*, 70 Mich App 249, 251; 245 NW2d 705 (1976). Nonetheless, we note that the trial court erred in granting Rosebrugh's intervention, however limited, in the divorce action. Domestic relations actions are strictly statutory. The only parties to a divorce action are the two people seeking dissolution of their marriage. Third-party intervention in divorce actions is permitted in extremely limited circumstances not present here. Rosebrugh's sole recourse on any issue involving his son was in the paternity action, not in the divorce action.

concerning Devon on the basis of the equitable parent or equitable estoppel doctrine. Whether the undisputed facts of this case afford Killingbeck a basis to assert parental rights concerning Devon, either as an equitable parent or through equitable estoppel, constitutes a legal question, which this Court considers de novo. See *Hartford Accident & Indemnity Co v Used Car Factory, Inc,* 461 Mich 210, 215 n 5; 600 NW2d 630 (1999); *Cardinal Mooney High School v Michigan High School Athletic Ass'n,* 437 Mich 75, 80; 467 NW2d 21 (1991); *Kelly v Builders Square, Inc,* 465 Mich 29, 34; 632 NW2d 912 (2001); MCR 7.203.

Our Supreme Court in *Van v Zahorik,* 460 Mich 320; 597 NW2d 15 (1999), foreclosed reliance on the equitable parent and equitable estoppel doctrines under the circumstances of this case. In *Van,* the parties never married, but they resided together for six years and had two children together, one while they cohabited and another after the period of cohabitation had ended. *Id.* at 323. The plaintiff alleged that he supported the children, even after his relationship with the defendant terminated, until the defendant denied him access to the children because he had begun seeing another woman. *Id.* The plaintiff filed a petition to establish his paternity of the children. *Id.* at 324. Although the plaintiff "conceded that blood testing showed that he was not the biological father," he "argued that he was an 'equitable parent' and that [the defendant] was equitably estopped from denying that he [wa]s the father." *Id.* The trial court granted the defendant's motion for summary disposition of the paternity action pursuant to MCR 2.116(C)(8), and this Court affirmed, *Van v Zahorik,* 227 Mich App 90; 575 NW2d 566 (1997); see *Van,* 460 Mich 324-326.

Our Supreme Court also affirmed. *Id.* at 323, 337-338. Regarding the equitable parent doctrine, the Court

observed that "[b]y its terms, this doctrine applies, upon divorce, with respect to a child *born or conceived during the marriage.*" *Id.* at 330 (emphasis added). The Court reasoned that, because "the children at issue were not born or conceived during marriage[,] . . . the doctrine of equitable parenthood would not apply to [that] case." *Id.* at 330-331. The Court rejected the plaintiff's invitation "to extend the doctrine outside the context of marriage," leaving that decision to the Legislature. *Id.* at 331. Concerning equitable estoppel, the Court recognized that several cases had "applied this doctrine to estop a husband from denying paternity of a child born during marriage, but of whom he is not the biological father." *Id.* at 335. But the Court similarly refused to extend this doctrine beyond the context of marriage, primarily because "the Child Custody Act, which comprehensively governs child custody matters, does not recognize it." *Id.* at 336.

In this case, the parties agree that Devon was not conceived or born within the marital relationship between plaintiff and Killingbeck. The parties testified that plaintiff had intimate relationships with both Rosebrugh and Killingbeck around the time of Devon's conception and that plaintiff did not enter into her marital relationship with Killingbeck until March 2002, well over three years after Devon's birth. Accordingly, applying *Van,* we conclude that Killingbeck has no parental rights to Devon under the doctrines of equitable parenthood or equitable estoppel.

Although the record is not totally clear, it appears that the trial court's order granting Killingbeck parenting time as Devon's "de facto father" was based, at least in part, on the equitable parenthood and equitable

estoppel doctrines.[2] As noted, the parties argued about the applicability of those doctrines below, just as they do here. To the extent the trial court relied on equitable parenthood or equitable estoppel, the order granting Killingbeck parenting time was entered in error.

Had the trial court not revoked the acknowledgement of parentage, an order granting parenting time to Killingbeck would have been authorized. Such an acknowledgement "establishes paternity," meaning that "the man signing as the father" has the "same relationship" with the child as he would have had if the child were "born or conceived during a marriage." MCL 722.1004. The acknowledgment "may be the basis for court ordered . . . parenting time," *id.*, and "[e]ither parent may assert a claim . . . for parenting time . . . ." MCL 722.1007(d).

Thus, the acknowledgement of parentage gave Killingbeck status as a parent, eligible to pursue parenting time under the Child Custody Act, MCL 722.21 *et seq.* In *Van,* the Supreme Court denied parental status under that act to a man who was not a biological father because he "ha[d] not pursued other means to become a legal parent, e.g., adoption." *Van,* 460 Mich 328. Killingbeck did not seek adoption of Devon here for the obvious reason that he thought Devon was his biological son. Nonetheless, recognizing that Devon's being born out of wedlock might present problems, Killingbeck did follow another legislatively established procedure "to

---

[2] Initially, the court order to this effect seems largely to have been based on the parties' agreement. However, an order in contravention of the law cannot be justified by such an agreement. See *Kokx v Bylenga,* 241 Mich App 655, 661; 617 NW2d 368 (2000) (observing that parties cannot enter a binding stipulation regarding the law applicable to their claims); *In re Ford Estate,* 206 Mich App 705, 708; 522 NW2d 729 (1994) (explaining that parties cannot by mere agreement supersede procedures and conditions set forth in statutes or court rules).

become a legal parent," by joining with plaintiff in an acknowledgement of parentage. Pursuant to the acknowledgement of parentage statute, Killingbeck thus became a "legal parent" for purposes of the Child Custody Act under the *Van* analysis.

The record strongly suggests that the trial court's two decisions—to revoke the acknowledgement of parentage while, at the same time, granting Killingbeck parenting time rights as a "de facto father"—were interrelated and interdependent. In other words, it seems clear that the trial court revoked the acknowledgement only because it thought that, nonetheless, Killingbeck could be granted parenting time. As discussed above, the trial court thus acted on a mistaken understanding of the law.

Here, the trial court "apparently misunderstood the legal basis for" revoking the acknowledgement of parentage while also granting Killingbeck parenting time as a de facto father, "resulting in an incorrect conclusion that was violative of logic . . . ." *Stepp v Dep't of Natural Resources*, 157 Mich App 774, 779; 404 NW2d 665 (1987). "Where the trial court misapprehends the law to be applied, an abuse of discretion occurs" and reversal is warranted. *Bynum v The ESAB Group, Inc*, 467 Mich 280, 283; 651 NW2d 383 (2002).

Vacation of the order revoking the acknowledgement of parentage on the basis of this principle is especially appropriate here.[3] Revocation of an acknowledgement of parentage, even in cases where there is "clear and convincing evidence . . . that the man is not the father," must be warranted by the "equities of the case." MCL 722.1011(3). The record here evidences the trial court's

---

[3] We recognize that the propriety of that order was not directly raised on appeal. Nonetheless, we may "enter any judgment or order or grant further or different relief as the case may require . . . ." MCR 7.216(A)(7).

conclusion that, notwithstanding the repeated protestations of plaintiff and Rosebrugh, the equities of this case justified Killingbeck's continuing right to parenting time. At the very least, the trial court might well have weighed the equities of this case differently in determining the motion to revoke Killingbeck's acknowledgement of parentage had it realized that Killingbeck's right to seek parenting time was at issue.

Accordingly, while we reverse the order granting Killingbeck parenting time as a "de facto father," we also vacate the order revoking the acknowledgement of parentage as it may have been based on a mistake of law. On remand, the trial court shall reconsider the motion to revoke the acknowledgement in light of this opinion.

C

Rosebrugh also asserts that the trial court improperly considered his motion for custody and parenting time without conducting a full evidentiary hearing regarding Devon's best interests.[4] We disagree.

Before an evidentiary hearing is held, a movant must first establish a change in circumstances. In order to establish a change of circumstances, a movant must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a significant effect on the child's well-being, have materially changed. MCL 722.27(1)(c).[5] As

---

[4] In light of our resolution of the issues above, it is unnecessary to consider this issue. Nonetheless, we do so briefly to provide direction should the issue arise in this or another case.

[5] Not just any change will suffice; the evidence must demonstrate something more than the normal life changes (both good or bad) that occur during the life of a child, and there must be at least some evidence

we stated in *Vodvarka v Grasmeyer,* 259 Mich App 499, 508-509; 675 NW2d 847 (2003):

> The requirement that a party seeking a change in custody first establish proper cause or a change of circumstances emanates from the Child Custody Act, MCL 722.21 *et seq.* Specifically, MCL 722.27(1)(c) provides that if a child custody dispute has arisen from another action in the circuit court, the court may "[m]odify or amend its previous judgments or orders for proper cause shown or because of change of circumstances . . . ." On the basis of this language, this Court held in *Dehring v Dehring,* 220 Mich App 163, 165; 559 NW2d 59 (1996), quoting *Rossow v Aranda,* 206 Mich App 456, 458; 522 NW2d 874 (1994), that if the movant does not establish proper cause or change in circumstances, then the court is precluded from holding a child custody hearing:
>
> " 'The plain and ordinary language used in MCL 722.27(1)(c); MSA 25.312(7)(1)(c) evinces the Legislature's intent to condition a trial court's reconsideration of the statutory best interest factors on a determination by the court that the party seeking the change has demonstrated either a proper cause shown or a change of circumstances. *It therefore follows as a corollary that where the party seeking to change custody has not carried the initial burden of establishing either proper cause or a change of circumstances, the trial court is not authorized by statute to revisit an otherwise valid prior custody decision and engage in a reconsideration of the statutory best interest factors.'* [Emphasis added.]"
>
> These initial steps to changing custody—finding a "change of circumstance or proper cause" and not changing an "established custodial environment" without clear and convincing evidence—are intended to "erect a barrier against removal of a child from an established custodial environment and to minimize unwarranted and disruptive changes of custody orders." *Heid v AAASulewski (After*

---

that the material changes have had or will almost certainly have an effect on the child. *Vodvarka v Grasmeyer,* 259 Mich App 499, 513; 675 NW2d 847 (2003).

*Remand),* 209 Mich App 587, 593; 532 NW2d 205 (1995).
See also *Foskett v Foskett,* 247 Mich App 1, 6; 634 NW2d
363 (2001) (recognizing the Legislature's intent in enacting
the Child Custody Act was to prevent the removal of
children from established custodial environments " 'except
in the most compelling cases,' " quoting *Baker v Baker,* 411
Mich 567, 577; 309 NW2d 532 [1981]). The movant, of
course, has the burden of proving by a preponderance of
the evidence that either proper cause or a change of
circumstances exists *before* the trial court can consider
whether an established custodial environment exists (thus
establishing the burden of proof) and conduct a review of
the best interest factors. *Dehring, supra.*

Here, there was no change of circumstances, either
alleged or established. The original custody order in the
divorce case awarded plaintiff sole physical custody.
Although not an intervening party at that time, Rose-
brugh, later, at the January 29, 2004, hearing, stipu-
lated parenting rights for both himself and Killingbeck
without challenging plaintiff's custody.[6] The sole physi-
cal custody originally awarded to plaintiff was left
unchanged in the resulting March 17, 2004, order. Less
than five months later, on August 10, 2004, Rosebrugh
moved for a "determination of custody" in the paternity
case. It was undisputed that plaintiff had sole physical
custody of Devon and had acted as Devon's primary
caregiver for all his life. It was also undisputed that
Rosebrugh visited his son regularly since Devon turned
four years old and that he intended to continue acting
as Devon's father. His primary complaint and focus in
the hearing on the motion was the denial of parenting
time for the time between Devon's birth and the age of
four. There was no hint of any change of circumstances
during the five-month period between March 17, 2004,
and August 10, 2004.

---

[6] Both Rosebrugh and plaintiff were represented by the same attorney.

Although the trial court did not address or acknowledge the best interest factors, it was not required to do so unless a change of circumstance was first established. *Vodvarka, supra.* Because Rosebrugh failed to establish this crucial first step, the trial court did not err in refusing to hold an evidentiary hearing on the best interest factors.

D

Rosebrugh lastly contends that a conflict of interest existed during the trial court proceedings because he and plaintiff were represented by the same counsel. Again, we disagree.

"It is a well-established ethical principle that 'an attorney owes undivided allegiance to a client and usually may not represent parties on both sides of a dispute.' " *Evans & Luptak, PLC v Lizza,* 251 Mich App 187, 197; 650 NW2d 364 (2002), quoting *Barkley v Detroit,* 204 Mich App 194, 203; 514 NW2d 242 (1994). The Michigan Rules of Professional Conduct (MRPC) generally prohibit an attorney from representing multiple clients when the representation of one client is directly adverse to, or may materially limit, the attorney's representation of another client. MRPC 1.7. A party seeking the disqualification of counsel " 'bears the burden of demonstrating specifically how and as to what issues in the case the likelihood of prejudice will result.' " *Rymal v Baergen,* 262 Mich App 274, 319; 686 NW2d 241 (2004) (citations omitted). "The conclusion that a conflict of interest exists is a question of fact and is reviewed under the clearly erroneous standard." *Camden v Kaufman,* 240 Mich App 389, 399; 613 NW2d 335 (2000).

Rosebrugh apparently asserts a conflict of interest arose from the fact that, at the January 2004 trial

concerning the petition to revoke the acknowledgement of parentage signed by plaintiff and Killingbeck, attorney Gregory M. Simon represented both Rosebrugh and plaintiff. Plaintiff and Rosebrugh had both signed the petition to revoke the acknowledgement, indicating that, at the time of the dual representation by Simon, plaintiff and Rosebrugh shared the same goal. During the subsequent custody, parenting time, and support phase of the proceedings, which for the first time potentially placed plaintiff and Rosebrugh on opposite sides of the issues, Simon had discontinued his representation of either plaintiff or Rosebrugh, each of whom was represented by separate counsel.[7]

Because the only instance of dual representation occurred during the period in which plaintiff and Rosebrugh shared the same interests, and because Rosebrugh failed to set forth with specificity the manner in which Simon's dual representation during the initial phase of the proceedings prejudiced Rosebrugh during the later custody, parenting time, and support proceedings, we conclude that no conflict of interest occurred. *Rymal, supra* at 319.

E

We find the dissenting opinion's concern about how our decision today affects Rosebrugh to be misplaced. In this appeal, no one is challenging either his right to parenting time or his responsibility for child support under the orders entered by the trial court and, accord-

---

[7] Simon acted as plaintiff's successor counsel in the divorce action from late October 2003 until May 3, 2004, the date when Nichol J. Palumbo filed her appearance as plaintiff's counsel, and Stephen W. Tyler filed his appearance for Rosebrugh. Tyler filed Rosebrugh's motion to intervene in the divorce action on May 5, 2004, after Simon discontinued his representation of plaintiff.

ingly, these issues are not properly before this Court. Our opinion today does not address the lower court orders in these regards, and any comment on the issues raised, sua sponte, by the dissent is mere obiter dictum. We express no such comment, other than to note that the trial court's actions on remand, as a result of our decision, may have some effect on Rosebrugh. If so, and if another appeal with respect to that effect should arise in the future, appellate review would be appropriate.

CONCLUSION

We reverse the order granting Killingbeck parenting time as a "de facto father." We also vacate the trial court's order revoking the acknowledgement of parentage and remand for reconsideration of that issue in light of that result. We do not retain jurisdiction.

KELLY, J., concurred.

COOPER, P.J. (concurring in part and dissenting in part). I do agree with the majority's disposition of some of the issues on appeal, including the majority's conclusion, although not its analysis, that the trial court improperly revoked Mr. Killingbeck's acknowledgment of parentage. However, in an effort to obviate the reasonable and necessary pronouncement that the trial court reached in this case—equitable parenting—the majority has created an absurd and illogical result. On remand, if the trial court determines not to revoke Mr. Killingbeck's acknowledgment of parentage, he will remain Devon's legal father with full rights of visitation. However, Mr. Rosebrugh, who would be legally responsible to support his biological child (as the majority has not reversed that order), would have no

grounds to seek visitation. If the trial court again determines to revoke Mr. Killingbeck's acknowledgment, he would be precluded from seeking visitation with the child that he raised and supported from birth, the half-brother to his daughters. Without relying on equitable principles, Devon must be separated from one of these men.

It is well established that child custody disputes are equitable in nature.[1] There is an extensive statutory framework under which child custody, parenting time, and support issues must be pursued.[2] However, even the Legislature specifically recognized that these proceedings are equitable.[3] It is the role of a trial judge to enter a verdict with fairness and equity[4] and the paramount concern is the best interests of the child.[5] The trial court exercised its equitable powers and granted parenting time to both Devon's biological and legal/equitable fathers. As Devon cannot have two legal fathers, the court's power to grant equitable relief was the only way to serve the best interests of this child, to grant him access to two father figures who wish to parent him. The majority abandons concern for the best interests of the child and ignores the equitable nature of child custody proceedings in favor of an obdurate adherence to judicial fundamentalism. However, even interpreting the statutes and case law by these inflexible standards, their decision is untenable.

---

[1] See *Bowie v Arder*, 441 Mich 23, 38-39; 490 NW2d 568 (1992) (discussing the historical equitable jurisdiction of the chancery courts over children).

[2] *Van v Zahorik*, 460 Mich 320, 328; 597 NW2d 15 (1999).

[3] MCL 722.26(1).

[4] See *Sands v Sands*, 442 Mich 30, 36-37; 497 NW2d 493 (1993) ("[A] judge's role is to achieve equity, not to 'punish' one of the parties."); *Perrin v Perrin*, 169 Mich App 18, 23; 425 NW2d 494 (1988) ("The trial court is to see that the parties receive a fair trial . . . .").

[5] *Mason v Simmons*, 267 Mich App 188, 194-195; 704 NW2d 104 (2005), quoting *Eldred v Ziny*, 246 Mich App 142, 150; 631 NW2d 748 (2001).

### I. FACTUAL BACKGROUND

Plaintiff and Mr. Killingbeck were involved for a number of years before Devon was conceived. They moved in together before Devon's birth and agreed to raise their son together. Believing Devon to be Mr. Killingbeck's biological child, the couple filed an acknowledgment of parentage shortly after Devon's birth. The couple proceeded to have two more children together (Devon's half-sisters) and subsequently married. In early 2002, plaintiff and Mr. Killingbeck began having marital problems, and plaintiff filed for divorce in September. In October of 2002, when Devon was four years old, plaintiff informed Tony Rosebrugh, a former boyfriend, that she believed that he may be Devon's biological father. Mr. Rosebrugh submitted to a paternity test, which revealed that he was, in fact, Devon's biological father.[6] However, knowing this result, plaintiff still stipulated the entry of the judgment of divorce in May of 2003, indicating that Mr. Killingbeck was Devon's father, awarding him joint legal custody and liberal parenting time, and ordering him to pay child support.

### II. ACKNOWLEDGMENT OF PARENTAGE

By joining with plaintiff to complete an acknowledgment of parentage, Mr. Killingbeck was considered to be Devon's natural father.[7] The acknowledgment of parentage establishes paternity, and it "may be the basis for court ordered child support, custody, or parenting time without further adjudication."[8] While an acknowl-

---

[6] Mr. Rosebrugh had no contact with Devon until that time. However, Mr. Rosebrugh has had regular contact with Devon since learning of their relationship.

[7] MCL 722.1003(1).

[8] MCL 722.1004, quoted in *Aichele v Hodge*, 259 Mich App 146, 153; 673 NW2d 452 (2003).

edgment of parentage "does not afford the father the same legal rights as a father whose child is born within a marriage," it does confer upon the child the full rights of a child born in wedlock.[9] The child "bear[s] the same relationship to the mother and the man signing as the father as a child born or conceived during marriage . . . ."[10] As Devon was a child "born out of wedlock" and Mr. Killingbeck "properly executed" an acknowledgment of parentage, Mr. Killingbeck was entitled to "reap the benefits and acquire the burdens of parenthood."[11] Accordingly, Devon had the same right to continue his relationship with Mr. Killingbeck, his legally acknowledged natural father, as he did with his mother. The trial court could properly grant Mr. Killingbeck parenting time and order him to pay child support without further adjudication of the issue of paternity.

For reasons only she can know, plaintiff joined with Mr. Rosebrugh in October of 2003 to file a paternity action and petition the court to revoke Mr. Killingbeck's acknowledgment of parentage. The trial court granted this petition in January of 2004. However, the trial court refused plaintiff's attempts to deny Mr. Killingbeck his rights to parent Devon, finding him to be Devon's "de facto" father. Although I agree with the trial court that Mr. Killingbeck had an equitable right to parent Devon, I believe that the trial court erred in revoking the acknowledgment of parentage in the first instance.

MCL 722.1011 provides, in relevant part:

(1) The mother or the man who signed the acknowledgment, the child who is the subject of the acknowledgment,

---

[9] *Eldred, supra* at 148-149, citing MCL 722.1004.

[10] MCL 722.1004.

[11] *Aichele, supra* at 153.

or a prosecuting attorney may file a claim for revocation of an acknowledgment of parentage. . . . A claim for revocation may be filed as a motion in an existing action for child support, custody, or parenting time in the county where the action is and all provisions in this act apply as if it were an original action.

(2) A claim for revocation shall be supported by an affidavit signed by the claimant setting forth facts that constitute 1 of the following:

(a) Mistake of fact.

(b) Newly discovered evidence that by due diligence could not have been found before the acknowledgment was signed.

(c) Fraud.

(d) Misrepresentation or misconduct.

(e) Duress in signing the acknowledgment.

(3) . . . The party filing the claim for revocation has the burden of proving, by clear and convincing evidence, that the man is not the father and that, *considering the equities of the case*, revocation of the acknowledgment is proper.[12]

A petitioner may file a motion to revoke an acknowledgment of parentage in an existing action. Although plaintiff and Mr. Rosebrugh knew that Mr. Killingbeck was not biologically related to Devon one month after plaintiff filed her complaint for divorce, they took no action to revoke the acknowledgment during the divorce proceedings. The judgment of divorce naming Mr. Killingbeck as Devon's father was entered months before plaintiff and Mr. Rosebrugh finally filed their petition. Plaintiff made no attempt to amend that portion of the judgment naming Mr. Killingbeck as Devon's legal father until more than a year after the

---

[12] MCL 722.1011 (emphasis added).

judgment was filed.[13] The trial court denied this belated
request and the judgment of divorce was never
amended. Trial courts speak through their judgments,
which represent the final determination of the matters
submitted.[14] With the entry of the judgment of divorce,
Mr. Killingbeck was judicially determined to be Devon's
legal father. Consent judgments are binding, final or-
ders; they do not have less force than a judgment
entered following trial.[15] "Indeed, 'public policy de-
mands finality of litigation in the area of family law to
preserve [the] surviving family structure.' "[16]

Furthermore, plaintiff did not allege sufficient
grounds for revocation of the acknowledgment of par-
entage or to set aside the judgment of divorce.[17] Plaintiff
truthfully asserted at the time Mr. Killingbeck signed
the acknowledgment of parentage that she believed him

---

[13] See MCR 2.517(B) (a party must file a motion to amend a final
judgment within 21 days after its entry); MCR 2.612(C)(2) (a motion for
relief from judgment must be made within a reasonable time or within
one year if the motion is brought pursuant to subsection [C][1][a], [b], or
[c]).

[14] *Tiedman v Tiedman*, 400 Mich 571, 576; 255 NW2d 632 (1977).

[15] *Staple v Staple*, 241 Mich App 562, 564; 616 NW2d 219 (2000).

[16] *Id.* at 564-565, quoting *McGinn v McGinn*, 126 Mich App 689, 693;
337 NW2d 632 (1983). See also *Mixon v Mixon*, 237 Mich App 159, 167;
602 NW2d 406 (1999).

[17] Pursuant to MCR 2.612(C)(1), a party may be granted relief from a
final judgment on the following grounds:

(a) Mistake, inadvertence, surprise, or excusable neglect.

(b) Newly discovered evidence, which by due diligence could not
have been discovered in time to move for a new trial under MCR
2.611(B).

(c) Fraud (intrinsic or extrinsic), misrepresentation, or other
misconduct by an adverse party.

(d) The judgment is void.

to be Devon's biological father.[18] However, plaintiff was aware that Mr. Rosebrugh was Devon's biological father long before she stipulated the entry of the judgment of divorce. Plaintiff was no longer mistaken regarding Devon's paternity at the time of the judgment. Mr. Rosebrugh's biological relationship to Devon clearly was not newly discovered evidence when the judgment of divorce was entered or when plaintiff and Mr. Rosebrugh filed the petition to revoke the acknowledgment. Moreover, Mr. Killingbeck did not engage in any wrongful conduct in acknowledging paternity of a child when he believed he was the biological father.

Most importantly, plaintiff failed to establish by clear and convincing evidence that revocation of the acknowledgment was proper "considering the equities of the case." There is more to fatherhood than mere biology.[19] Mr. Killingbeck " 'demonstrate[d] a full commitment to the responsibility of parenthood' " in Devon's life and formed "a substantial parent-child relationship" with

---

(e) The judgment has been satisfied, released, or discharged; a prior judgment on which it is based has been reversed or otherwise vacated; or it is no longer equitable that the judgment should have prospective application.

[18] Mr. Killingbeck also truthfully asserted that he believed himself to be Devon's biological father when he signed the acknowledgment. Accordingly, it cannot be said that the acknowledgment contains a false swearing. See *Aichele, supra* at 155-156.

[19] See *Tuan Anh Nguyen v Immigration and Naturalization Service,* 533 US 53, 64-68; 121 S Ct 2053; 150 L Ed 2d 115 (2001) (upholding a gender-based distinction in determining the citizenship of a child born to unwed parents of different nationalities as a biological father without an established and legally acknowledged parent-child relationship does not have sufficient ties to confer citizenship on his child); *Lehr v Robertson,* 463 US 248, 261; 103 S Ct 2985; 77 L Ed 2d 614 (1983); *Stanley v Illinois,* 405 US 645, 651; 92 S Ct 1208; 31 L Ed 2d 551 (1972) (protecting an unwed father's interest in rearing "the children he has sired *and* raised") (emphasis added).

him.[20] He lived with Devon as the boy's father and supported and cared for Devon. Mr. Killingbeck and Devon have an interest in continuing that relationship.[21] Accordingly, I would find that plaintiff and Mr. Rosebrugh did not establish grounds to support revoking Mr. Killingbeck's acknowledgement of parentage and would, therefore, reverse that order.[22]

### III. FATHERS' RIGHT TO PARENTING TIME

Although the trial court improperly revoked the acknowledgment of parentage, the court properly granted Mr. Killingbeck parenting time with Devon. Pursuant to Michigan law, a child's rights in regard to custody, support, and parenting time must be determined in accordance with the Child Custody Act.[23] As a party who acknowledged parentage of a child born out of wedlock, and who was proclaimed to be Devon's legal father by the final judgment of the court, Mr. Killingbeck had standing to seek parenting time pursuant to the act.[24] It is well established that the paramount concern in resolving child custody and parenting time disputes is the best interests of the child.[25] Pursuant to the plain language of the act, it "is equitable in nature and shall be liberally construed and applied to establish

[20] *Michael H v Gerald D*, 491 US 110, 142-143; 109 S Ct 2333; 105 L Ed 2d 91 (1989) (Brennan, J., dissenting), quoting *Lehr, supra* at 261.

[21] *Id.* at 143.

[22] My belief that Mr. Killingbeck should remain Devon's legal father does not negate my belief that Mr. Rosebrugh also has a right to parenting time with his biological child.

[23] MCL 722.21 *et seq.*; MCL 722.24(1).

[24] *Aichele, supra* at 167.

[25] *Harvey v Harvey*, 470 Mich 186, 192; 680 NW2d 835 (2004); *Mason, supra* at 194-195, quoting *Eldred, supra* at 150; *Farrell v Farrell*, 133 Mich App 502, 512; 351 NW2d 219 (1983).

The best interests factors include, in relevant part:

promptly the rights of the child and the rights and duties of the parties involved."[26]

In an attempt to remedy the inequity of this situation, and to protect Devon from the whims of his mother, the trial court recognized Mr. Killingbeck's right to parent the child that he had raised from birth. Innumerable states have recognized the rights of de facto, or psychological, parents.[27] A de facto or psycho-

---

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

\* \* \*

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

\* \* \*

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

\* \* \*

(l) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23.]

[26] MCL 722.26(1).

[27] See *Kinnard v Kinnard*, 43 P3d 150 (Alas, 2002) (granting joint custody to biological father and stepmother); *In re Slayton*, 292 Ill App 3d 379; 685 NE2d 1038 (1997) (granting visitation rights to man who raised child, believing himself to be the natural father); *In re AD & GD*, 489 NW2d 50 (Iowa App, 1992) (granting custody to father of both his natural child and stepchild); *Karen P v Christopher J B*, 163 Md App 250; 878 A2d 646 (2005) (granting custody to man who raised daughter, believing himself to be the natural father); *Youmans v Ramos*, 429 Mass 774; 711 NE2d 165 (1999) (granting visitation rights to aunt who raised an eleven-year-old child from infancy); *Karner v McMahon*, 433 Pa Super 290; 640 A2d 926 (1994) (granting custody to stepfather following mother's placement in a nursing home, as biological father did not

logical parent is a person who is not biologically related to a child, but has lived with and raised the child as his or her own, taking on all the duties and benefits of parenthood.[28] Mr. Killingbeck was Devon's legally acknowledged natural father and is his legal father. Mr. Killingbeck lived with and raised Devon from infancy. Devon clearly bonded with Mr. Killingbeck over his lifetime and, psychologically, views Mr. Killingbeck as his father. Nothing in our case law requires a child to be torn from his legal and psychological parent. To the contrary, such upheaval cannot be in the child's best interests.[29]

I disagree with the majority that *Van v Zahorik*[30] forecloses reliance on equitable principles in this case. As acknowledged by the majority, *Van* is distinguishable from the current case. In *Van*, the Michigan Supreme Court limited the doctrine of equitable parenthood to

---

attempt to contact the children until stepfather filed his petition); *Quinn v Mouw-Quinn*, 552 NW2d 843 (SD, 1996) (granting visitation rights to and ordering support from man who was the natural father of one child, but stepfather to another).

[28] The Supreme Court of Massachusetts defined "de facto parent" as

"an adult, not the child's legal parent, who for a period that is significant in light of the child's age, developmental level, and other circumstances, . . . has resided with the child, and . . . for reasons primarily other than final compensation, and with the consent of a legal parent to the formation of a de facto parent relationship . . . regularly has performed . . . a majority of the caretaking functions for the child." [*Youmans, supra* at 776 n 3, quoting ALI Principles of the Law of Family Dissolution, § 2.03(1) (Tent Draft No 3 Part 1 1998).]

See also *Karner, supra* at 929.

[29] Justice MARKMAN, while still a judge of this Court, noted in *York v Morofsky*, 225 Mich App 333, 338; 571 NW2d 524 (1997), that "stability in acknowledged parent-child relationships is generally in the child's best interests. . . . [F]or [the child] to suddenly be deprived of the only father that he has ever known might well be emotionally traumatizing."

[30] *Van, supra.*

prohibit "a person with a longstanding relationship to a child, but who is not a biological *or legal parent* of the child and not related by marriage to the child's biological parent" to pursue parental rights to a child under equitable principles.[31] According to the Court, a father who is not biologically related to his child may only succeed under the doctrine of equitable parenthood if the child was born or conceived during marriage.[32]

However, the Court in *Van* did not limit the rights of *legal* fathers to pursue parental rights. As in this case, Mr. Van believed himself to be the biological father of his children and raised them accordingly. Unlike Mr. Killingbeck, however, Mr. Van never pursued the means to become the legal parent of his children.[33] Mr. Killingbeck did sign an acknowledgment of parentage, became Devon's legally acknowledged natural father, and was named as Devon's legal parent in the parties' judgment of divorce. As a legal parent, he had full rights to seek visitation with his child pursuant to the Child Custody Act, limited only by a determination of what visitation was in Devon's best interests.[34] Although the parties were not married at the time of Devon's conception, or the conception of their subsequent children, plaintiff and Mr. Killingbeck did marry and raise their children together as one family. It is antithetical to "Michigan's public policy favor[ing] marriage" to divest legal parents of their natural right of parenthood merely because they married later rather than sooner.[35]

---

[31] *Id.* at 323 (emphasis added).

[32] *Id.* at 331.

[33] *Id.* at 328.

[34] See *id.* (distinguishing biological and legal parents from third persons under the Child Custody Act).

[35] *Id.* at 332. In fact, as Justice Scalia noted in *Michael H*, "[t]he family unit accorded traditional respect in our society . . . includes the household of unmarried parents and their children." *Michael H, supra* at 123 n 3.

Furthermore, it is not inconsistent to grant parenting time to both Mr. Killingbeck and Mr. Rosebrugh. Mr. Rosebrugh is Devon's biological father. He was unable to determine his paternity or develop a relationship with Devon until the child was four years old. Certainly, blood line is important and a fit, biological parent is entitled to a presumption in his favor.[36] While the interests of a fit, biological parent may outweigh the interests of a third party, neither supersedes the best interests of the child.[37] Devon is bonded to Mr. Killingbeck in an established parent-child relationship. It would be inequitable to deny parenting time to the only father Devon has ever known; to the man who legally acknowledged his parentage of Devon; to the man who married Devon's mother and fathered Devon's sisters. Although the Supreme Court found in *Van* that Mr. Van was not legally entitled to court-ordered parenting time, it noted that Mr. Van and his children were not legally prohibited from maintaining their relationship.[38] Devon is currently only seven years old, however, and cannot maintain a relationship with either Mr. Killingbeck or Mr. Rosebrugh on his own. As his mother's cooperation in this matter is dubious, the trial court properly ordered specific parenting time to protect Devon's best interests.

Accordingly, I would reverse the trial court's order revoking the acknowledgment of parentage and affirm the trial court's orders recognizing Mr. Killingbeck's right to parent his child. I would also affirm the trial court's orders granting parenting time to Mr. Rosebrugh.

---

[36] *Mason, supra* at 197.

[37] *Id.* at 194-195.

[38] *Van, supra* at 337.