*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GREGORY YATOOMA,

        Plaintiff-Appellee,

v

CHRISTOPHER YATOOMA,

        Defendant-Appellant,

and

MSY CAPITAL PARTNERS, LLC,

        Defendant.

UNPUBLISHED
December 18, 2025
3:34 PM

No. 367367
Oakland Circuit Court
LC No. 2023-200283-CB

Before: BORRELLO, P.J., and LETICA and GARRETT, JJ.

PER CURIAM.

Defendant Christopher Yatooma appeals by leave granted[1] the trial court's order granting plaintiff Gregory Yatooma's motion to disqualify Christopher's[2] attorneys from also serving as the attorneys for defendant MSY Capital Partners, LLC ("MSY").[3] For the reasons set forth in this opinion, we vacate the trial court's ruling and remand this matter for further proceedings consistent with this opinion.

---

[1] *Yatooma v Yatooma*, unpublished order of the Court of Appeals, entered December 11, 2024 (Docket No. 367367).

[2] Christopher Yatooma and Gregory Yatooma are brothers. Because they share the same last name, we will refer to them by their first names.

[3] That order also appointed a receiver to determine the membership of MSY and whether any of MSY's members were entitled to settlement proceeds from a separate lawsuit. Those rulings are not at issue in this appeal.

-1-

## I. BACKGROUND

This case involves a protracted and somewhat complicated business dispute between brothers. According to Christopher's deposition testimony, he and his brothers, Gregory and Jeff Yatooma, were at one point equal "partners" in business activity that involved the buying and selling of "cannabis real estate." Christopher described cannabis real estate as "[r]eal estate that can be -- that is zoned properly and can receive a cannabis permit by a municipality to operate, whether it be for grow, PC or any of the other cannabis licenses." The three brothers apparently used several different business entities to carry out these cannabis related business activities, including MSY. However, Christopher also explained that "MSY is involved in other real estate activities, investment activities besides cannabis, and those other activities my brothers are not partners in."

Christopher testified that he was the only member of MSY when it was initially formed and that Jeff and Gregory became members of MSY in approximately 2017. Jeff contributed time, energy, and relationships in exchange for his membership in MSY, and Gregory worked in the business and also contributed "capital in different forms" in exchange for his membership interest in MSY. The capital that Gregory contributed included money and real estate. Christopher characterized the partnership with his brothers as a "pretty fluid situation."

According to Christopher, Jeff ceased to be involved in MSY near the end of 2018 and "formally relinquished all interest to any cannabis-related businesses, as well as other things we were involved in together, end of '19." Christopher and Jeff apparently had different views on how to operate the business and mutually decided to stop working together. Christopher testified that at the time of his deposition, which was taken on March 17, 2021, he and Gregory were the current members of MSY.

On December 14, 2022, Christopher and Gregory signed a document simply titled, "Agreement." The parties on appeal in the present litigation refer to this document as the "Buyout Agreement." The document is extremely vague, but it generally purports to indicate, as relevant to the present action, (1) that Christopher will make certain initial payments to Gregory and a series of monthly payments to Gregory and (2) that Christopher will retain "all assets and all liabilities." The agreement also includes the following incomplete sentence as bullet point 17: "50% of Liv Wellness lawsuit proceeds (split expenses- all decisions made together)."

Bullet point 17 of the agreement evidently refers to a different lawsuit between MSY and Liv Wellness Center,[4] which the parties agree was resolved through a March 10, 2023 confidential settlement agreement.

Gregory filed the present action against Christopher and MSY on May 10, 2023, essentially contending as relevant to this appeal that Christopher had breached the buyout agreement by refusing to make payments to Gregory and refusing to equally divide the proceeds from the Liv Wellness litigation with Gregory. Gregory also sought a declaratory order that he was a 50%

---

[4] There were other parties involved in that lawsuit as well, but those parties are not relevant to the issues before us in this action.

owner of MSY and was entitled to 50% of the Liv Wellness litigation proceeds. Gregory further sought a judicial decree of dissolution of MSY.

Gregory subsequently moved in the trial court to disqualify Butzel Long PC and Legal Consulting, PLLC, from serving as counsel for MSY. Gregory argued that Christopher did not have the authority to unilaterally engage counsel for MSY without seeking approval from Gregory as the other member-manager of MSY and putting the matter to a vote. Gregory also argued that Butzel Long and Legal Consulting should be disqualified from representing MSY because both firms were also representing Christopher, which created a conflict of interest and violated MRPC 1.7 and 1.13. Gregory maintained that the firms were actually representing Christopher's interests and thus were not representing MSY's interests. Gregory argued that Butzel Long's and Legal Consulting's simultaneous representation of Christopher and MSY prevented the attorneys from giving proper counsel to MSY because "Greg and Chris have conflicting interests as it concerns MSY" and an "attorney representing MSY's best interests would provide impartial advice on distribution of the Litigation Proceeds, not file a motion seeking distribution of the Litigation Proceeds to an MSY bank account solely owned and controlled by Chris, over Greg's objection."

Christopher and MSY (collectively defendants) opposed the motion. Defendants argued in relevant part that the confidential settlement agreement showed that Christopher signed the agreement on behalf of MSY as "member," while Gregory only signed the agreement on behalf of MSY as its "authorized agent," and that Christopher was therefore the sole member of MSY and had the authority to retain counsel on behalf of MSY. Defendants also argued that Gregory had admitted in his deposition that Christopher had always been the manager of MSY. Furthermore, defendants argued that MRPC 1.7 was not violated because the law firms never represented Gregory and his consent was not required. Defendants additionally argued that MRPC 1.13 was not violated because that rule permits a lawyer to represent an organization and a member of the organization subject to MRPC 1.7. Defendants also argued that Gregory's motion was barred by collateral estoppel and fell within the scope of an arbitration agreement.

The trial court heard oral argument from the parties and ruled as follows:

> But the problem is, I don't know who actually are the members of MSY based upon the history, based upon the testimony, based upon even sir now you telling me that there is no information, there's no documentation with regard to the members, or any alleged sale with regard to MSY. That's what [t]he issue is.
>
> * * *
>
> So let me tell you, with regard to the motion to disqualify, the Court's granting the motion; Butzel Long is disqualified from representing MSY. I'll be putting a receiver in place for the limited purposes of determining the ownership of MSY. The receiver will have the ability with regard to attorney/client privileges, so that she can determine the ownership of MSY.

The court clarified on the record that its ruling also applied to Urban Legal Group, which was the other firm representing MSY after Urban Legal Group had been substituted for Legal Consulting. On appeal, Christopher argues that this ruling was erroneous.

-3-

## II.  STANDARD OF REVIEW

"The determination of the existence of a conflict of interest that disqualifies counsel is a *factual question* that we review for clear error." *Kern v Kern-Koskela*, 320 Mich App 212, 230; 905 NW2d 453 (2017) (quotation marks and citation omitted).  "Factual findings are clearly erroneous only if this Court is left with a definite and firm conviction that a mistake was made." *Lamont Community Church v Lamont Christian Reformed Church*, 285 Mich App 602, 613; 777 NW2d 15 (2009) (quotation marks and citation omitted).  We "review de novo the application of 'ethical norms' to a decision whether to disqualify counsel." *Id*. (citation omitted).

## III.  ANALYSIS

In this case, Gregory's motion to disqualify counsel was based on his contention that counsel could not represent both Christopher and MSY without violating MRPC 1.7 and 1.13 because counsel would actually be representing Christopher's interests at the expense of MSY's interests.

"It is a well-established ethical principle that an attorney owes undivided allegiance to a client and usually may not represent parties on both sides of a dispute." *Killingbeck v Killingbeck*, 269 Mich App 132, 148; 711 NW2d 759 (2005) (quotation marks and citation omitted).  "The Michigan Rules of Professional Conduct (MRPC) generally prohibit an attorney from representing multiple clients when the representation of one client is directly adverse to, or may materially limit, the attorney's representation of another client." *Id*., citing MRPC 1.7.

MRPC 1.7 provides as follows:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>
> (2) each client consents after consultation.
>
> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>
> (2) the client consents after consultation.  When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

At issue in this case is the representation by legal counsel of both the corporate entity MSY and its member, Christopher.  "A corporation exists as an entity apart from its shareholders, even

where the corporation has but one shareholder." *Fassihi v Sommers, Schwartz, Silver, Schwartz & Tyler, PC*, 107 Mich App 509, 514; 309 NW2d 645 (1981). Under MRPC 1.13(a), a "lawyer employed or retained to represent an organization represents the organization as distinct from its directors, officers, employees, members, shareholders, or other constituents." Nonetheless, a "lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders, or other constituents, subject to the provisions of Rule 1.7. If the organization's consent to the dual representation is required by Rule 1.7, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders." MRPC 1.13(e). "A party seeking the disqualification of counsel bears the burden of demonstrating specifically how and as to what issues in the case the likelihood of prejudice will result." *Killingbeck*, 269 Mich App at 148 (quotation marks and citation omitted).

Here, the precise basis for the trial court's ruling disqualifying counsel from representing MSY is unclear. The only thing the trial court made clear was its uncertainty on the record about who are the members of MSY. The trial court then proceeded to disqualify counsel based on the apparent confusion over the respective interests of the corporate entity in relation to Gregory and Christopher. However, confusion and speculation are not inherently equivalent to a conflict of interest. Although the parties would seemingly like this Court to adjudicate their respective interests in MSY (among other things), we do not have a sufficient factual basis from which we could render any decision in this matter, much less adjudicate the interests of the brothers relative to MSY. Simply stated, we have no idea at this juncture what the rights and responsibilities are of any of the parties because the trial court failed to make any factual findings to allow for meaningful appellate review and as such, clearly erred. *Lamont Community Church*, 285 Mich App at 613.

Accordingly, we vacate the trial court's order disqualifying counsel from representing MSY and remand this matter for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs are awarded. MCR 7.219

/s/ Stephen L. Borrello
/s/ Anica Letica
/s/ Kristina Robinson Garrett