**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JULY 26, 2006

MICHAEL J. BARNES, JR.,

Plaintiff-Appellee,

v                                                                No. 129606

KIM KRISTINE JEUDEVINE,

Defendant-Appellant.

BEFORE THE ENTIRE BENCH

WEAVER, J.

Plaintiff filed this action seeking a determination of paternity for a child conceived while the child's mother was married to another man. Plaintiff alleges that the child was not an issue of the marriage, because he is the child's biological father. The question presented is whether plaintiff has standing under the Paternity Act, MCL 722.711 *et seq.,* to seek a determination of paternity. To resolve this question in this case, we must decide whether a default judgment of divorce that states it appears that "no children were born of this marriage and none are expected" is a sufficient judicial determination that the subject child was not the issue of the marriage.

We reverse the judgment of the Court of Appeals and hold that plaintiff does not have standing under the Paternity Act because the default judgment is not clear and convincing evidence that the child was not an issue of the marriage. We remand this case to the circuit court for the entry of an order of summary disposition for the defendant.

I

Defendant-appellant Kim K. Jeudevine married James V. Charles III on July 11, 1996. Sometime before Charles filed for divorce and before defendant was served with the divorce complaint on August 12, 1998, defendant learned that she was pregnant. Defendant did not inform her husband that she was pregnant. Plaintiff Michael J. Barnes, Jr., alleges that he is the child's biological father.

Defendant did not respond to the complaint for divorce and did not appear at the divorce hearing. A default judgment of divorce was entered on November 2, 1998. The default judgment provides:

> [I]t satisfactorily appears to this Court that there has been a breakdown in the marriage relationship to the extent that the objects of matrimony have been destroyed, and there remains no reasonable likelihood that the marriage can be preserved; it further appearing that no children were born of this marriage and none are expected.

On February 26, 1999, four months after the divorce was final, defendant gave birth. A birth certificate identifies plaintiff as the child's father and an affidavit of parentage signed by plaintiff and defendant the day after the child's

2

birth states that plaintiff is the father.[1]  Plaintiff and defendant lived together and raised the child for over four years, until the summer of 2003, when plaintiff and defendant ended their relationship.  Defendant has not allowed plaintiff to see the child since they stopped living together.

On September 30, 2003, plaintiff filed a paternity action against defendant, alleging that he was the father of defendant's child.  To support his contention, plaintiff cites the judgment of divorce between Charles and defendant that states "that no children were born of this marriage and none are expected."  Plaintiff also cites the affidavit of parentage and the birth certificate identifying plaintiff as the father of the child.

Defendant answered plaintiff's paternity action on October 22, 2003.  She neither admitted nor denied plaintiff's claimed paternity.  However, defendant denied that the child was born "out of wedlock," because the child had been conceived while she was legally married to Charles.  Defendant admitted signing the affidavit of parentage and the birth certificate, but claimed that she did so under duress.

On November 10, 2003, a hearing was held in the Family Division of the Kalamazoo Circuit Court.  The court granted defendant's motion for summary

---

[1] The affidavit of parentage states that by signing the document, the mother of the child admits that "she was not married when this child was born or conceived; or that this child, though born or conceived during a marriage, is not an issue of that marriage as determined by a court of law."

disposition, concluding that plaintiff did not have standing to sue under the Paternity Act. The court found (1) that the child was conceived during the marriage and (2) that there was no court determination that the child was a child born or conceived during the marriage but is not the issue of that marriage.

Plaintiff appealed, and the Court of Appeals reversed the order of the circuit court and remanded the matter to the circuit court for the reinstatement of plaintiff's claim.[2] The Court of Appeals held that the statement in the default judgment of divorce that "no children were born of this marriage and none are expected" was a determination by a court that the child was not an issue of the marriage. Therefore, the Court of Appeals held that plaintiff had standing to sue under the Paternity Act.

Defendant sought leave to appeal in this Court, and we ordered the clerk to schedule oral argument pursuant to MCR 7.302(G)(1) to determine whether to grant the defendant's application.[3] We asked the parties to include among the issues to be addressed:

> (1) [W]hether plaintiff lacked standing to proceed under the Paternity Act, MCL 722.711 *et seq.*, where the subject child's mother was married at the time of the child's conception, see *Girard v Wagenmaker*, 437 Mich 231 (1991); and (2) whether the default judgment of divorce amounted to a judicial determination that the child was born or conceived during the marriage but was not the issue of the marriage.

---

[2] Unpublished opinion per curiam, issued August 23, 2005 (Docket No. 252840).

[3] 474 Mich 1056 (2006).

4

II

We review a trial court's decision to grant summary disposition de novo. *Wilson v Alpena Co Rd Comm,* 474 Mich 161; 713 NW2d 717 (2006). Whether plaintiff has standing to bring a paternity action is a question of law that we also review de novo. *In re KH*, 469 Mich 621; 677 NW2d 800 (2004).

III

The Paternity Act, MCL 722.711 *et seq.,* confers on the circuit court jurisdiction over proceedings involving the determination of a child's paternity. One purpose of the act relevant to this case is to assure, for the sake of the child, that the child's legitimacy will not be decided by mere casual inference, but only after specific statutory procedures are followed. To this end, the act provides that a mother, a father, or in certain circumstances, the Department of Human Services, may bring an action in circuit court to establish paternity of a child, if that child is alleged to have been "born out of wedlock." MCL 722.714.

> The Paternity Act defines "[c]hild born out of wedlock" as
>
> a child begotten and born to a woman who was not married from the conception to the date of birth of the child, or a child that the court has determined to be a child born or conceived during a marriage but not the issue of that marriage. [ MCL 722.711(a).]

Thus, to establish that the child was born out of wedlock, plaintiff must prove that either (1) the child was not born or conceived during the mother's marriage, or (2) though the child was born or conceived during a marriage, a court has determined that the child was not the issue of the marriage.

5

Plaintiff filed this action alleging that he is the biological father of the defendant's child. However, it is undisputed that defendant was married to another man when the child was conceived. Plaintiff gave birth just four months after her divorce was final. Therefore, to have standing to seek a determination of paternity, it is necessary for plaintiff to establish that a court "has determined" that there was a child born or conceived during the marriage and that the child was not an issue of the marriage. We recently reemphasized that "[t]he presumption that children born or conceived during a marriage are the issue of that marriage is deeply rooted in our statutes and case law." *In re KH, supra* at 634. The presumption of legitimacy can be overcome only by a showing of clear and convincing evidence. *Id.* at 634 & n 24.

In *Girard v Wagenmaker, supra* at 243, this Court held that in order for a biological father to establish standing under the Paternity Act, there must be a "prior court determination that a child is born out of wedlock." The requirement that there be a prior court determination is consistent with the language of the statute, MCL 722.711(a). As analyzed in *Girard, supra* at 242 (citations omitted):

> "[H]as determined" is the present perfect tense of the verb "determine." The present perfect tense generally "indicates action that was started in the past and has recently been completed or is continuing up to the present time," or shows "that a current action is logically subsequent to a previous recent action."

*Girard* noted that requiring a prior determination that a child is not an issue of a marriage comports with Michigan's longstanding presumption that children born

6

or conceived during a marriage are legitimate issue of the marriage. *Girard, supra* at 246 (citing *Serafin v Serafin,* 401 Mich 629, 636; 258 NW2d 461 [1977]).

In this case, the question is whether the circuit court's statement in the judgment of divorce that there appeared to be no children born of or expected from the marriage was a court determination of sufficient specificity to lead to the conclusion that this child was not an issue of the marriage. Plaintiff asserts that this statement in the judgment of divorce qualifies as a court determination that the child was born out of wedlock and is not an issue of the marriage. We disagree. A "determination" is that which sets the limits to or the bounds of something. *Webster's New World Dictionary* (3d ed), p 375. In its legal sense, a "determination" is that which "implies an ending or finality of a controversy or suit." Black's Law Dictionary (6th ed), p 450. To overcome the strong presumption of the legitimacy of a child born or conceived during a marriage, a court determination must settle with finality a controversy regarding the child's legitimacy.

This Court held as much in *Girard, supra* at 243, by concluding that where there was "[n]o previous action . . . undertaken to determine the child's paternity [and] no ongoing actions . . . to determine the child's paternity," there was no prior court determination that a child was not the issue of a marriage. Because there had been no previous action to determine that the child was born out of wedlock, *Girard* held that a putative father did not have standing to seek paternity under the Paternity Act. Similarly, we stated in *In re KH:*

7

> By requiring a previous determination that a child is born out of wedlock, the Legislature has essentially limited the scope of parties who can rebut the presumption of legitimacy to those capable of addressing the issue in a prior proceeding—the mother and the legal father . . . . If the mother or legal father does not rebut the presumption of legitimacy, the presumption remains intact, and the child is conclusively considered to be the issue of the marriage despite lacking a biological relationship with the father. [*In re KH, supra* at 635.]

Consistent with *Girard* and *In re KH*, we hold that a court determination under MCL 722.711(a) that a child is not "the issue of the marriage" requires that there be an affirmative finding regarding the child's paternity in a prior legal proceeding that settled the controversy between the mother and the legal father.

In this case, the dissents assert that the legal findings necessary to meet the "prior adjudication" requirement for a paternity suit are established by the default judgment. The Court of Appeals correctly recognized that "[a] default judgment is just as conclusive an adjudication and as binding upon the parties of whatever is essential to support the judgment as one which has been rendered following answer and contest." *Perry & Derrick Co, Inc v King*, 24 Mich App 616, 620; 180 NW2d 483 (1970). However, we disagree with the Court of Appeals conclusion and the dissents' assertion that the judgment of divorce in this case constitutes a "court determination" that the child was not an issue of the marriage under MCL 722.711(a). The holding in the default judgment that there were no children of the marriage simply does not address the similar but distinct question whether there was a child born or conceived during the marriage, and whether it was the issue of the marriage.

In short, there have been no legal actions addressing the subject child's paternity. The circuit court stated in the judgment of divorce merely that it appeared no children were born or expected of the marriage. The court's statement does not support a conclusion that "the court has determined [the child] to be a child born or conceived during a marriage but not the issue of the marriage." MCL 722.711(a). This conclusion is underscored by the requirement that a court find clear and convincing evidence that a child is not the issue of a marriage to overcome the presumed legitimacy of a child born or conceived during a marriage. *In re KH, supra* at 634 n 24. The circuit court did not make a finding that there was a child born or conceived during the marriage that was not an issue of the marriage. It, therefore, cannot be reasonably asserted that there was clear and convincing evidence of such a finding. For these reasons also, the court's statement that it appeared that no children were born or expected of the marriage is not a sufficient court determination that there was a child conceived during the marriage that was not an issue of the marriage.

Plaintiff also argues that the affidavit of parentage and the birth certificate assist him in his claim. Plaintiff argues that even if the judgment alone is insufficient, he should prevail because of the admissions inherent in these documents. We disagree. It was acknowledged in the affidavit of parentage and in the birth certificate that plaintiff was the biological father of the child. Yet, despite these documents, the child is still presumed to be a legitimate issue of the marriage. An affidavit of parentage is a stipulation by a woman of a man's

9

paternity under the Acknowledgment of Parentage Act, MCL 722.1001 *et seq.* This is not a court determination that the child was born out of wedlock, as is required under either the Paternity Act or the Acknowledgment of Parentage Act. Both acts provide that a child is born out of wedlock only when (1) the woman was not married at the time of the conception and birth, or (2) a court previously determined that the child was not an issue of the marriage. Further, a birth certificate is also not a court determination that the child was not an issue of the marriage. For these reasons, the affidavit of parentage and the birth certificate do not rebut the presumption that the child was an issue of defendant's marriage to Charles. Charles is and remains the child's legal father, and it is incorrect to suggest our decision leaves this child without a father.

In this case, the subject child is presumed to be the issue of the marriage because the child was conceived during the marriage. The presumption remains until rebutted by clear and convincing evidence to the contrary. Consequently, the party wishing to overcome the presumption must present evidence that the child, despite the date of its conception, is not the issue of the marriage and a court must so hold. The circuit court's statement in the judgment of divorce that it appeared that there would be no children does not rebut that presumption. Further, the legal father, Charles, never renounced the presumption of legitimacy. Because the child was not conceived outside of marriage, and because there is no prior court determination that the child is not an issue of the marriage, we hold that plaintiff does not have standing under the Paternity Act.

10

For these reasons, we reverse the judgment of the Court of Appeals and remand to the circuit court for entry of an order of summary disposition for defendant.

Elizabeth A. Weaver
Clifford W. Taylor
Maura D. Corrigan
Robert P. Young, Jr.

MICHAEL J. BARNES, JR.,

        Plaintiff-Appellee,

v                                                          No. 129606

KIM KRISTINE JEUDEVINE,

        Defendant-Appellant.

_____

KELLY, J. (*dissenting*).

I would deny leave to appeal in this case. I believe that plaintiff has standing to pursue his action under the Paternity Act, MCL 722.711 *et seq*. The Court of Appeals did not err in finding that defendant's default judgment of divorce contains a legally sufficient judicial determination that the child in question is not the issue of defendant's marriage.

### THE UNDERLYING FACTS

Plaintiff had a sexual relationship with defendant while she was separated from her husband. It appears that she was four months pregnant with plaintiff's child when her husband, who did not know she was pregnant, was granted a default judgment of divorce. In it, the court stated, "it further appearing that no children were born of this marriage and none are expected . . . ."

This statement from the judgment appears to be accurate. Plaintiff and defendant signed an affidavit of parentage agreeing that plaintiff was the child's

natural father. He was shown to be the father on the child's birth certificate. Plaintiff, defendant, and the child lived together as a family for nearly 4 1/2 years before the parties separated. The child has always believed that plaintiff is his father.

Plaintiff filed this claim for recognition of his paternity so he could continue fathering the child. In response, defendant neither admitted nor denied that plaintiff is the boy's father. Instead, she argued that plaintiff lacks standing to bring a paternity claim under applicable case law. *Girard v Wagenmaker*, 437 Mich 231; 470 NW2d 372 (1991); *Aichele v Hodge*, 259 Mich App 146; 673 NW2d 452 (2003); *Kaiser v Schreiber,* 469 Mich 944 (2003). The circuit court agreed with her. Plaintiff appealed.

The Court of Appeals reversed the circuit court decision. It concluded that the language in the divorce judgment that there were no children "born of this marriage and none are expected" was a judicial determination that the defendant's former husband is not the child's legal father. The majority rejects this conclusion, observing that a child's legitimacy should not be "decided by mere casual inferences . . . ." *Ante* at 5.

THE MAJORITY'S ERROR

This is not a case of mere casual inferences. Defendant was personally served with the complaint for divorce that affirmatively alleged that she was not pregnant. She did not answer the complaint. Nor did she contest entry of the default judgment of divorce. Had she done so, her son's paternity could have

2

been, and presumably would have been, thoroughly litigated and scientifically determined. Her former husband's testimony under oath that he and defendant had no children and expected none provided legally sufficient support for the court's determination that "no children were born of this marriage and none are expected." In its ruling today, this Court rewards defendant for her refusal to reveal the fact of her pregnancy and the identity of her child's father while the divorce was pending.

Courts speak through their orders and judgments.[1] Default judgments are not lesser judgments by any means. Like other judgments, a default judgment of divorce operates as final statement of fact and law to the world.

In the matter that is before us, the paternity action, the majority appears to go behind the divorce judgment to nullify one of its findings. The finding is that defendant's husband did not father any of defendant's children. The majority does this despite the fact that the finality of the judgment is central to the orderly administration of justice. Plaintiff, like any other nonparty to a judgment, is entitled to rely on the judgment's recitation of facts and on the finality of its rulings.

---

[1] MCL 600.2106 provides, "A . . . judgment . . . of any court of record in this state . . . shall be prima facie evidence of . . . all facts recited therein . . . ." The default judgment of divorce at issue here resolved the fact that Charles did not father any children with defendant. Until and unless it is reopened and amended, it is res judicata with respect to the findings therein.

3

The judgment in this case says that no children were born of the marriage. It follows that defendant's son is not an issue of defendant's marriage. It happens that the judge did not know that defendant became pregnant during the marriage. However, the judge's ruling that no children were born of the marriage is likely correct. There is no evidence, and no one is asserting, that defendant's son is an issue of the marriage. There is strong evidence that plaintiff is his biological father. In short, there is nothing to support a finding that the divorce judge's statement regarding the issue of the marriage was not accurate.

Under the circumstances of this case, the Court of Appeals panel was correct to reverse the judgment of the circuit court and remand the case for reinstatement of plaintiff's claim. Plaintiff properly relies on the default judgment of divorce to assert his standing to bring this paternity action. He should have the opportunity to assert his paternity. The availability of blood and DNA (deoxyribonucleic acid) testing makes a determination on the question relatively easy and accurate.

In this case, the majority again evidences a rigid adherence to wooden strictures such as the presumption of legitimacy even where, as here, the purposes of the presumption are not served. The majority has exhibited a consistent pattern of ruling against putative fathers who seek to exercise their due process rights with

4

respect to children they claim as their own.[2]  Once again, the majority relies on the presumption of legitimacy despite strong evidence that the fact presumed to be true is false.  In finding that defendant's former husband is the child's legal father, the Court is throwing into question part of the findings of the divorce judgment even though (1) the presumption of legitimacy has never been tested, and (2) the findings in the judgment are prima facie evidence that the child in question is not an issue of the marriage.

A presumption is a procedural device.  *Widmayer v Leonard*, 422 Mich 280, 286; 373 NW2d 538 (1985).  It operates during a legal proceeding.  A rebuttable presumption is subject to being overcome, in the case of the presumption of legitimacy, by clear and convincing evidence.  Unless the divorce proceeding is reopened and the judgment amended under circumstances where both parties have notice and the opportunity to respond, the judgment's current findings are the dominant legal facts.  And plaintiff can properly rely on them to assert his standing to pursue his paternity action.

---

[2] Recent cases in which the majority has denied standing or refused to consider granting standing to putative biological fathers for the avowed purpose of protecting the presumption are:  *McNamara v Farmer,* 474 Mich 877 (2005); *Numerick v Krull*, 265 Mich App 232 (2005), lv den 474 Mich 877 (2005); *In re KH*, 469 Mich 621 (2004); *Aichele v Hodge*, 259 Mich App 146 (2003), lv den 469 Mich 994 (2004); *Kaiser v Schreiber,* 469 Mich 944 (2003); *Pniewski v Morlock*, unpublished opinion per curiam of the Court of Appeals (June 5, 2003), Docket No. 238767, lv den 469 Mich 904 (2003); *In re CAW*, 469 Mich 192 (2003).

Surely, the presumption of legitimacy was not created to render children fatherless. Yet, that is precisely what the majority's application of it does in this case. As a practical matter, defendant's former husband will almost certainly never provide financial support for defendant's son. I am uncertain that the majority's statement that he is the child's legal father is correct. It is not clear what status the presumption of legitimacy has in light of the findings of the divorce judgment.

What is clear is that, as a practical matter, the child can expect to have no father in defendant's former husband. In the unlikely event that defendant should ever try to assert that her former spouse is the child's legal father, the consequences are predictable. If defendant sought to and succeeded in reopening the divorce proceedings to obtain support for the child from her former spouse, he would object. Presumably he would prove through a DNA or blood test that he is not the biological father. The test results would provide the clear and convincing evidence that would rebut the presumption of legitimacy.

For this reason, it is not to be anticipated that defendant will ever attempt to obtain a court order finding that her former spouse is the child's father. And plaintiff cannot seek to reopen the divorce case. *Killingbeck v Killingbeck*, 269 Mich App 132; 711 NW2d 759 (2005).[3] In effect, the majority has blocked

---

[3] In *Killingbeck*, a child's biological father moved to intervene in plaintiff's divorce case concerning custody issues. He was not the plaintiff's husband. The Court of Appeals noted that the trial court erred in granting his motion to

(continued…)

plaintiff from ever having the legal right to father and support the child. As our

Court observed 29 years ago, without dissent,

> "If the function of a court is to find the truth of a matter so that justice might be done, then a rule which absolutely excludes the best possible evidence of a matter in issue rather than allow it to be weighed by the trier of fact must necessarily lead to injustice. Further, when a court voluntarily blindfolds itself to what every citizen can see, the public must justifiably question the administration of law to just that extent." [*Serafin v Serafin*, 401 Mich 629, 635-636; 258 NW2d 461 (1977), quoting the Texas Court of Civil Appeals in *Davis v Davis*, 507 SW2d 841, 847 (Tex Civ App, 1974).]

CONCLUSION

I would deny leave to appeal and remand this case to the trial court for a

full hearing of plaintiff's paternity claim. Plaintiff should be accorded standing

there. I would hold that defendant's judgment of divorce contains an effective

finding by the divorce court that defendant's son was not an issue of her marriage.

The judgment's failure to be more specific was caused solely by defendant's

deception in keeping secret the fact that she was pregnant. There is strong,

unrefuted evidence that any presumption that plaintiff's son was the issue of

defendant's marriage would be rebutted if tested. Defendant has not chosen to test

it; plaintiff cannot.

---

(…continued)
intervene, saying, "Domestic relations actions are strictly statutory. The only parties to a divorce action are the two people seeking dissolution of their marriage. . . . [The biological father's] sole recourse on any issue involving his son was in the paternity action, not in the divorce action." *Id.* at 140 n 1.

7

Defendant should not be heard now to rely on a presumption that she should have asserted in the divorce court. The majority apparently concludes that the presumption arose when her child was born and has force and effect outside and despite the language of the divorce judgment. Even if that were true, and I question it, defendant should not be permitted to rely on the presumption to defeat plaintiff's standing in his paternity action. If she wishes to assert it, defendant should seek to reopen the divorce case. For this Court to place the presumption of legitimacy over the judgment of divorce is to allow defendant to defeat plaintiff's standing in the paternity action. This is despite the fact that the presumption that defendant relies on likely would have been rebutted already but for her deception of her husband and of the divorce court. The result is ill-reasoned and unjust.

Marilyn Kelly

STATE OF MICHIGAN

SUPREME COURT

MICHAEL J. BARNES, JR.,

     Plaintiff-Appellee,

v                                                    No. 129606

KIM CHRISTINE JEUDEVINE,

     Defendant-Appellant.

_____

MARKMAN, J. *(dissenting).*

I respectfully dissent. I cannot join the majority's opinion, which would reverse the Court of Appeals, and which would deny plaintiff-- who no one disputes is the biological father of the child at issue-- the right to be the father of the child he has raised for over four years. Instead, the majority would leave this child without a father. In the process, the majority would render a default judgment in this case meaningless; it would condone and encourage gamesmanship by a party to a child custody proceeding; and it would allow a party to prevail, in significant part because of that party's own delinquency in failing to participate in an earlier judicial proceeding.

BACKGROUND

Plaintiff alleges that he and defendant had a sexual relationship while defendant was still married to her ex-husband, James Charles. A child was conceived before defendant's divorce from Charles, but born four months after the divorce. Charles, who had filed for divorce, had no knowledge of the pregnancy because defendant did not appear in the divorce action, and the default divorce judgment stated that "it further appear[ed] that no children were born of this marriage and none are expected . . . ." Plaintiff and defendant lived together with the child for nearly 4 1/2 years after the divorce and before their separation; thereafter, defendant apparently denied plaintiff access to the child. Plaintiff claims that it has now been about 2 1/2 years since he has seen his son.

Plaintiff filed a paternity action, but the circuit court granted summary disposition to defendant, ruling that the default divorce judgment did not amount to the prior judicial determination that Charles was not the father of the child conceived during the marriage, as required by *Girard v Wagenmaker*, 437 Mich 231; 470 NW2d 372 (1991), and, therefore, that plaintiff lacked standing to bring a paternity action. The Court of Appeals reversed, holding that the default divorce judgment did, in fact, constitute such a prior judicial determination.

ANALYSIS

The presumption that children born or conceived during a marriage are the issue of that marriage is deeply rooted in our statutes and has been consistently recognized throughout our jurisprudence. See *In re KH*, 469 Mich 621, 634-635;

677 NW2d 800 (2004). This presumption vindicates a number of interests, not the least of which include the interest of the child in not having his or her legitimacy called into question, the interest of the state in ensuring that children are properly supported, and the interest of both in assuring the effective operation of intestate succession. The presumption also reflects the recognition that "'[t]here is no area of law more requiring finality and stability than family law.'" *Id.* at 635 n 27 (citation omitted). For this reason, we have held that "clear and convincing evidence" is required in order to overcome the presumption of legitimacy. *Id.* at 634.

The title of the Paternity Act, MCL 722.711 *et seq.*, states that the act is intended "to confer upon circuit courts jurisdiction over proceedings to compel and provide support of children born out of wedlock . . . ." See also *Van Laar v Rozema*, 94 Mich App 619, 622; 288 NW2d 667 (1980) ("intent behind this statute is to provide support for illegitimate children"). The act confers standing on the father of a child born out of wedlock to sue to establish paternity. *In re KH*, *supra* at 631-632. Section 1 of the act provides the relevant definition:

> (a) "Child born out of wedlock" means a child begotten and born to a woman who was not married from the conception to the date of birth of the child, *or a child that the court has determined to be a child born or conceived during a marriage but not the issue of that marriage.* [MCL 722.711 (emphasis added).]

Thus, there are two ways to satisfy the definition of "child born out of wedlock" for purposes of the Paternity Act: (1) a showing that the child was neither born nor

3

conceived during the mother's marriage or (2) a judicial determination that the child was not the issue of the marriage.

In *Girard,* we stated that the judicial determination referred to in the statute was a *prior* determination: "For a putative father to be able to file a proper complaint in a circuit court, . . . a circuit court must have made a determination that the child was not the issue of the *marriage at the time of filing the complaint*." *Girard, supra* at 242-243 (emphasis in original). The requirement of a prior determination that a child is born out of wedlock reflects a legislative recognition that paternity claims generally arise during divorce or custody disputes. *In re KH, supra* at 635. We have observed that this requirement suggests that the Legislature contemplated "'situations where a court in a prior divorce or support proceeding determined that the legal husband of the mother was not the biological father of the child.'" *Id.* (citation omitted). Such a prior determination is exactly what occurred in this case.

Defendant failed to respond to the complaint for divorce filed by her (now-ex) husband, and a default judgment of divorce ultimately was entered. It has long been the rule in this state that the entry of a default judgment has the legal effect of admitting all well-pleaded allegations. See, e.g., *Lesisko v Stafford*, 293 Mich 479, 481; 292 NW 376 (1940); *Wood v Detroit Inter-Ins Exch*, 413 Mich 573, 578; 321 NW2d 653 (1982); *Kalamazoo Oil Co v Boerman*, 242 Mich App 75, 79; 618 NW2d 66 (2000). In paragraphs 5 and 6 of his complaint for divorce, Charles alleged that defendant was not pregnant and that no children were born during the

4

marriage. Because defendant never appeared, she was defaulted, the legal effect of which was her admission that she was not pregnant and that no children were born during the marriage. Although it was clearly factually incorrect that defendant was not pregnant on the date of the entry of the default divorce judgment, the legal effect of her default was an admission that she was not pregnant on the date of the divorce. Because defendant never sought to set aside the default judgment and never appealed the judgment, it continues to stand for the proposition that no issue resulted from her marriage to Charles, that is, necessarily, that any child born after the date of the divorce was a "child born out of wedlock" for purposes of the Paternity Act, MCL722.711(a).

Moreover, the default judgment states, in pertinent part:

[I]t satisfactorily appears to this Court that there has been a breakdown in the marriage relationship to the extent that the objects of matrimony have been destroyed, and there remains no reasonable likelihood that the marriage can be preserved; it further appearing that *no children were born of this marriage and none are expected . . . .*" [Emphasis added.]

The majority suggests that this statement did not constitute an "affirmative finding regarding the child's paternity," *ante* at 8. I respectfully disagree. The plain language of the judgment could hardly be clearer: "no children were born of this marriage and none are expected[.]" Once more, "no children were born of this marriage and none are expected[.]" The trial court thus concluded, not unreasonably, that no children were born of the marriage of Charles and defendant. As such, the child later born to defendant must, for purposes of the

5

Paternity Act, MCL 722.711(a), have necessarily been a "child born out of wedlock."

The majority further suggests that it "cannot be reasonably asserted that there was clear and convincing evidence" to support the language in the default judgment. *Ante* at 9. Again, I must disagree. The proofs submitted at the hearing consisted entirely of Charles's testimony. Charles testified under oath, among other things, that "my wife is not pregnant at this time to the best of my knowledge." After hearing the testimony, the trial court stated:

> I find *from the proofs submitted* there has been a breakdown in the marriage relationship to the extent that the objects of matrimony have been destroyed and there remains no reasonable opportunity for the marriage to be preserved. *Accordingly, the Court hereby has signed the judgment as prepared and presented.* [Emphasis added.]

In other words, the trial court considered the evidence presented at the hearing and issued its judgment on the basis of that evidence. Among the evidence presented was Charles's express testimony that defendant was not pregnant. The language used in the default judgment is a function of this evidence; there is no requirement that a pregnancy test be administered before a trial court may rely on the uncontradicted statement of the husband that his wife is not pregnant. The trial court's order and its statement on the record are both quite clear, and completely contradict the majority's suggestion that the judgment was not supported by clear and convincing evidence.

6

"The rule is well established that courts speak through their judgments and decrees . . . ." *Tiedman v Tiedman*, 400 Mich 571, 576; 255 NW2d 632 (1977); see also *Newbold v Stewart*, 15 Mich 155 (1866). With respect to default judgments, the instant Court of Appeals panel observed:

> "A default judgment is just as conclusive an adjudication and as binding upon the parties of whatever is essential to support the judgment as one which has been rendered following answer and contest." *Perry & Derrick Co v King*, 24 Mich App 616, 620; 180 NW2d 483 (1970). See also *Schwartz v City of Flint*, 187 Mich App 191, 194; 466 NW2d 357 (1991). Respecting defaults, in their factual as well as legal components, is a function of the policy of respecting the finality of judicial judgments. See, e.g., *Nederlander v Nederlander*, 205 Mich App 123, 126; 517 NW2d 768 (1994). If the trial court's equivocation about there merely "appearing" to be no children of the marriage did indeed reflect the court's lack of opportunity to consider the factual matter fully, it nonetheless reflected no lack of legal authority behind the substance implicit in that unchallenged ruling. [Unpublished opinion per curiam of the Court of Appeals, issued August 23, 2005 (Docket No. 252840), slip op at 2.]

The Court of Appeals analysis regarding the force and effect of default judgments was entirely correct. Defendant's ex-husband testified in the divorce action that there were no children produced as a result of the marriage, and defendant did not appear to contest that representation, which was the legal equivalent of her admission of its truth. The judgment of divorce recognized that no children resulted from the marriage, i.e., that Charles was not the father of any children. It is difficult to imagine evidence more "clear and convincing" of a fact than one party's assertion of that fact under oath and the opposing party's admission of that fact. Accordingly, the legal presumption that a child is factually

7

the offspring of the mother's husband was addressed and fully repudiated in this case by the default judgment of divorce. The Court of Appeals, therefore, did not err in concluding that plaintiff had standing to bring this paternity action.[1]

Moreover, I note that a finding that defendant was not pregnant with Charles's child was, in fact, necessary for the trial court to have entered the default judgment of divorce. MCL 552.9f sets forth certain procedural requirements in an action for divorce and provides, in pertinent part:

> No proofs or testimony shall be taken in any case for divorce until the expiration of 60 days from the time of filing the bill of complaint, except where the cause for divorce is desertion, or when the testimony is taken conditionally for the purpose of perpetuating such testimony. *In every case where there are dependent minor children under the age of 18 years, no proofs or testimony shall be taken in such cases for divorce until the expiration of 6 months from the day the bill of complaint is filed.* [Emphasis added.]

Under this provision, no proofs or testimony can be heard in a divorce action in which children are involved until at least six months from the time of the filing of the complaint.[2] Charles filed the divorce action on June 23, 1998, and the

---

[1] The majority views as significant the fact that, along with the finding that no children were born to or conceived by the parties during their marriage, the circuit court did not also make an explicit finding that a child was conceived during the marriage. *Ante* at 9. However, given the determination of the trial court-- that "no children were born of this marriage and none are expected"-- it is nothing more than a matter of logic that the child here was "conceived during a marriage but not the issue of that marriage." MCL 722.711(a).

[2] MCL 552.9f does provide an exception:

> In cases of unusual hardship or such compelling necessity as shall appeal to the conscience of the court, upon petition and proper
> (continued…)

8

judgment of divorce was entered on November 2, 1998. Thus, the judgment of divorce granted to Charles and defendant was entered just over four months from the time of the filing of the complaint for divorce. Because a court may grant a divorce after only 60 days have elapsed when no minor children are involved, but may not grant a divorce until six months have elapsed when minor children are involved, the trial court *necessarily* must have concluded from the evidence presented, i.e., Charles's testimony, that defendant was not pregnant and, therefore, that no issue resulted from the marriage.[3] While later events

---

(…continued)
> showing, it may take testimony at any time after the expiration of 60 days from the time of filing the bill of complaint.

However, there is no indication whatsoever that this exception was invoked in the instant divorce.

[3] The majority recognizes that a "'default judgment is just as conclusive as an adjudication and as binding upon the parties of whatever is essential to support the judgment as one which has been rendered following answer and contest,'" *ante* at 8, quoting *Perry & Derrick Co v King*, 24 Mich App 616, 620; 180 NW2d 483 (1970). However, the majority proceeds promptly to disregard this basic principle by suggesting that the judgment of divorce was not a sufficient "court determination." *Ante* at 8. Yet, as noted above, under MCL 552.9f, the finding that the parties produced no issue was "essential to support the judgment." *Perry, supra* at 620. Moreover, had defendant appeared at the divorce proceeding, an answer to the question whether it had been shown by clear and convincing evidence that Charles fathered no children would have been "rendered following answer and contest." *Id.* Because *defendant* did not appear in that action, the question was decided against her. As such, the fact that Charles did not father a child with defendant was definitively resolved by the default judgment of divorce. The question of what legal standard should have been used to resolve the underlying question, in the absence of an appeal of that issue, is irrelevant to the fact that the judgment resolves the question.

9

subsequently proved this conclusion incorrect, they do not alter the fact that the trial court did, in fact, enter this finding. A court issuing a default judgment can only work with the information actually presented to it, but this does not alter the legal effect of its factual conclusions.

In reaching its conclusion, the majority renders the default judgment in this case essentially meaningless. The majority suggests, in effect, that a judicial determination requires that the court, in its decision-making, be fully aware of all the facts. However, in a default setting, where one party has failed to appear, it is obviously not always possible for the court to be fully aware of all the pertinent facts. After all, one side has chosen to deprive the court of the facts of which its witnesses presumably are aware. However, this has never been thought to relieve the trial court of its obligation to render a "determination" in such a case on the basis of as many facts as have been made available to the court. This is simply in the nature of default judgments. It is for this reason, among others, that parties to judicial proceedings would be prudent to show up for such proceedings.

The majority, wrongly in my view, characterizes the trial court's order as an equivocation because of its references in its order to "it satisfactorily *appears*" and "it further *appearing* . . . ." Quite apart from the fact that such language is entirely unremarkable in judicial orders, and has never before been thought to evidence "equivocation," the reality is that a prudent court could well choose to employ such language in virtually every order given that it is not omniscient and can only render decisions on the basis of evidence properly before it. The

majority would transform entirely innocuous and customary language, routinely employed by courts, probably from time immemorial, into language pregnant with meaning, showing hesitation and uncertainty on the part of the court. Better apparently for the court to affect an all-knowing certainty of facts than to reveal the ordinary cautiousness of a person who understands the fallibilities of the judicial process. The majority's deconstruction of court orders notwithstanding,[4] whether a court states that something "appears to be," rather than that it "is," does not deprive an order of the full force of judicial authority.[5] Rather, a judgment-- a default judgment no less than any other-- represents to the world a binding determination concerning the issues pertinent to the judgment, and persons may

---

[4] One wonders whether orders in which courts "believe" or "find" a particular fact satisfies the requirements of certitude established today by the majority. Moreover, it is noteworthy that the standard language this Court employs in denying a motion for reconsideration asserts that the motion is being denied because "it does not appear" that the initial order was entered erroneously. See, e.g., *McDanield v Hemker*, 714 NW2d 301 (2006). In light of this Court's obvious "equivocation" in such circumstances, one wonders whether parties who have received such orders are entitled to successive motions for reconsideration until we are certain enough to deny such motions unequivocally.

[5] The practical consequences of the majority's approach would be that default judgments would effectively always be in suspense pending additional information being made available to the judicial system, most typically, perhaps, from the defaulting party itself. While default judgments rarely constitute the ideal means of rendering a judicial "determination," such a procedure nevertheless is necessary to the orderly administration of justice, and the factual determinations made in accord with a default are just as binding as facts determined in judgments entered with the benefit of advocacy on both sides.

not avoid the legal effect of such a judgment by attempting to relitigate the facts that underlie it.[6]

Here, defendant failed to appear in the divorce action. Had she done so, she could have contested the trial court's conclusion that "no children were born of this marriage and none are expected[.]" Yet, by failing to appear, she failed to contest that conclusion, and the court entered a judgment based on the best information available to it at the time. Because the power to correct this determination rested at all times solely in defendant, she *in particular* should now be bound by that determination, rather than being allowed to profit from her own dereliction, as the majority permits-- if, indeed, denying her son the right to a father he has known since birth can be considered "profiting." The majority thus allows a party to prevail in this case in significant part because of that party's own delinquency in failing to participate in an earlier judicial proceeding.

As already noted, one of the Legislature's stated purposes in enacting the Paternity Act was "to compel and provide support of children born out of wedlock . . . ." Title of 1956 PA 205, MCL 722.711 *et seq*. The majority's decision today frustrates that purpose in the case of this child. In reversing the Court of Appeals,

---

[6] In arguing that the pertinent language of the divorce judgment does not constitute a sufficient determination that Charles was not the father of her child, plaintiff is essentially mounting a collateral attack on the divorce judgment. Because defendant did not seek leave to appeal the trial court's order in the divorce proceeding (or even paricipate in the proceeding), she should not be allowed to collaterally attack that order in this case. See *People v Sessions*, 474 Mich 1120 (2006).

12

the majority ensures that plaintiff has no legal obligation to provide support for this child. Moreover, because it seems clear that defendant has no intention of bringing a claim for support against her ex-husband, and if she ever did, could not prevail in that claim because Charles is obviously not the child's father, the majority also ensures by its decision today that this child will not receive support from *any* father. In other words, were defendant to seek support from her ex-husband, her child would almost certainly become-- even under the majority's holding-- a "child that the court has determined to be a child born or conceived during a marriage but not the issue of that marriage," MCL 722.711(a), affording plaintiff unquestionable standing to bring a paternity action. Clearly, as shown by the facts of this case, defendant has no interest in that outcome. As such, the majority provides defendant with its blessing to neglect to seek the support to which her child is entitled, solely for reasons of legal strategy. Thus, the majority sanctions defendant's legal gamesmanship at the expense of the well-being of her child.

This result is especially troubling in light of the continuing concern on the part of both the public and the members of this Court about fathers unwilling to financially support their children. The majority here rejects a father who

welcomes the opportunity to take responsibility for his child, and who has acted as a father for more than four years, in favor of no father at all.[7]

Although I believe strongly in the importance of the presumption of legitimacy, that presumption has been rebutted by clear and convincing evidence in this case. Defendant's ex-husband alleged that there were no children produced as a result of the marriage, and he testified to that effect at the divorce hearing. Defendant failed to appear at the hearing, which constituted a legal admission that there were no children of the marriage. The divorce judgment asserted that no children resulted from the marriage and, therefore, that Charles was not the father of any children. After the child was born, a birth certificate was prepared identifying plaintiff as the father. An affidavit of parentage was signed by the

---

[7] The majority argues that I am incorrect to suggest that its decision leaves this child without a father, and instead asserts that *Charles* is the child's legal father. *Ante* at 10. However, it is the majority that is, tragically, incorrect. The plain language of the judgment states that Charles is not the father of any children borne by defendant. Because this judgment is res judicata of the issue as between Charles and defendant, defendant would have to take *additional action* (for instance, bringing a motion to revise or alter the judgment under MCL 552.17[1]) in order for the status quo to be altered and Charles to be declared the child's father. Charles doubtlessly would be shocked to learn that the majority believes he is the father. He is not, either biologically or legally.

Moreover, as I have pointed out elsewhere, there is no chance that this status quo will ever be altered because: (a) defendant almost certainly will never bring a motion to revise or alter, knowing that it would be successfully challenged by Charles and that this would allow plaintiff to relitigate his paternity, something that defendant is plainly not prepared to allow; and (b) it is clear to everyone, the majority excepted, that the status quo accurately reflects the truth of the situation, namely that Charles is not the father of the child.

parties.[8]  The parties lived together with the child as a family for over four years.

And defendant has never denied that plaintiff is the father of her child.  Plaintiff

was a father to a little boy-- a little boy who stands to suffer greatly from the

majority's decision today, both financially and emotionally.  Yet the majority

finds that there is no "clear and convincing" evidence that *Charles* was not the

father of defendant's child.  I could not disagree more strongly.

CONCLUSION

In adopting defendant's position that the divorce judgment was insufficient

to establish that her child was born out of wedlock, the majority renders a default

judgment in this case meaningless; it condones and encourages gamesmanship by

a party to a child custody proceeding; and it allows a party to prevail, in significant

part, because of that party's own delinquency in failing to participate in an earlier

judicial proceeding.  For the foregoing reasons, I would affirm the decision of the

Court of Appeals and hold that plaintiff has standing to pursue a paternity action.

Stephen J. Markman
Michael F. Cavanagh

---

[8]  The affidavit provides that the parties "consent that the name of the natural father may be included on the certificate of birth for the child" and that "the mother states that she was not married when this child was born or conceived; or that this child though born or conceived during marriage, is not an issue of that marriage as determined by a court of law**."**